# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE BATISTA, # LH-8853,

    Plaintiff.

v.

Capt. Harris, Ex-security Captain

Lt. McCroskey, Prison Lieutenant

Lt. Plummer, Ex-Unit Manager

Sgt. Smith, Ex-Prison Officer

C/O. D.M. Procinik, Prison Officer,

Individually and in their Official Capacities,

    Defendants.

: Civil Action No. 3:17cv1983

: Judge _____

: Jury Trial Demanded

: **COMPLAINT**

FILED
SCRANTON
OCT 25 2017
PER _____ DEPUTY CLERK

## I. JURISDICTION & VENUE

1. This is a civil action authorized by U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the United States. The court has jurisdiction under 28 U.S.C. Section 1331(a) (3) and (4). Plaintiff Batista seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiff's claims for injunction relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedures.

2, The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. Section 1391(b) (1) and (2) because it is where the events giving rise to this complaint occurred.

## II. PLAINTIFF

3.  Plaintiff, Jose Batista, is and was at all times mentioned herein a prisoner of the Pennsylvania in the custody of the Pennsylvania Department of Corrections. He is currently confined in S.C.I. Smithfield. P.O.Box 999., 1120 Pike Street. Huntingdon, Pennsylvania 16652

## III. DEFENDANTS

4.  Defendant Harris ("Harris") is a correctional officer of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of prison captain, but at the time of the alleged incident, he was the Security Captain in charged, and was assigned to S.C.I. Huntingdon., 1100 Spike Street. Huntingdon, Pennsylvania 16654-1112.

5.  Defendant McCroskey ("McCroskey") is a correctional officer of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of prison lieutenant and was assigned to S.C.I. Huntingdon., 1100 Pike Street. Huntingdon, Pennsylvania 16654-1112.

6.  Defendant Plummer ("Plummer") is a correctional officer of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of prison lieutenant, but at the time of the alleged incident, he was the (R.H.U.) Unit Manager in Charged, and was assigned to S.C.I. Huntingdon., 1100 Pike Street. Huntingdon, Pennsylvania 16654-1112.

7. Defendant Procinik ("Procinik") is a correctional officer of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of prison officer and was assigned to S.C.I. Huntingdon., 1100 Pike Street. Huntingdon, Pennsylvania 16654-1112.

8. Defendant Smith ("Smith") is a correctional officer of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of prison Sergeant, but at the time of the alleged incident, he was a (R.H.U) officer and was assigned to S.C.I. Huntingdon., 1100 Pike Street 16654-1112.

## IV. STATEMENT OF FACTS

9. On April 30, 2016, at approximately 0600 hours, I informed Officer Smith that I was feeling depressed and that I needed to speak with my assigned Psychologist, Mr. B. Diehl or my Psychiatrist Assistant, Ms. Jessica Cousins but the officer refused to have it notified so I covered the prison cell door window with the towel, because when I get severely depressed, I get isolated and I do not like to speak with anybody else unless is my psychologist or my psychiatrist.

10. At approximately 0630 hours, Officer Smith came back around and noticed that my window was still covered with the towel and demanded to have it uncover, but I told him that unless I get to speak with my psychologist or psychiatrist I will not do so, then he walked away and did not called anybody.

11. At approximately 0700 hours, Officer Smith came back around, for the third time, demanding to uncover the window, but I repeated that unless I speak with my psychologist or psychiatrist I will not do so, because my depression was getting

worse and he just walked away again and did not called anybody as previous times.

12. Then, at approximately 0730 hours, I noticed that Lieutenant McCroskey, Sergeant John Doe, Officer Procinik, Officer Smith who was in charged, and maybe three other officers, John Does, information upon belief, came over to the front of my prison cell # 1001 at the time, and said out loud that if I do not let them restrain me that they were going to do it by force, but I was already too depressed and afraid, since I never have been in this kind of predicament to heed their demands, I remained silent.

13. Probably around ten minutes later, I observed Lt. McCroskey shooting two heavy loads of pepper spray inside of my cell, then I noticed that Officer Procinik, who was the leading officer, holding a shield, and as he came in, hit me with it on my face, put it away, punched me on the right side of my face with his closed fists, and kept on punching me on the back of my head with his closed fists, and between end the rest of the officers, tear off my boxers and T-Shirt leaving me completely naked, then Officer Procinik grabbed my right hand with his left, and as he was trying to handcuffed me, he repeatedly hit me with the hook of the on my right hand causing me at least eight wounds, without a reason because I was already calmed and not putting out a fight.

14. Two Officers, C/O Procinik and John Doe grabbed me by my arms, since I was not able to walk straight due to an earlier injury to my left knee, to take me into a holding cell so I could be seen by a female Nurse, Ms. Holley, but while they were carrying me there, half-way-down, the officers dropped me down to the ground hurting my knee even more, then I was seen by the nurse who treated me

with some type of liquid formula to cut off the chemical reaction caused by the pepper spray inside of my eyes.

15. But Defendants McCroskey and the rest of the officers refused to allow me to take a shower to help me alleviate the burning sensation that I was experiencing throughout my entire body due to the chemical reaction caused by the pepper spray since I was completely naked.

16. Soon after I was seen by the nurse, Defendants McCroskey, Sergeant John Doe, and Officer Smith who, happened to be assigned to the video camera, carried me by my shoulders and took me to another prison cell, # 1012, because I could not walk straight.

17. They dropped me in there completely naked without running water, without a mattress or blanket, and without the necessary basic human needs such as; a) toilet paper, b) soap, c) towels, d) toothbrush and toothpaste, e) shower shoes or prison shoes, f) clothes, and they also refused to allow me to take a shower to alleviate physical discomfort caused by the pepper spray's chemical reaction.

18. Throughout the entire process, from April 30, 2016 until May 11, 2016, I was completely naked for three days, without shower shoes or prison shower for three days, without a mattress or blankets for six days, without the basic human needs, as mentioned above, without running water, showers, mailing or receiving mail for eleven days.

19. Also, I was forced to be exposed to endure extremely cold jail-cell-cold temperatures, I believe below fifty-five degrees without the adequate and necessary

heat, and forced to endured unsanitary conditions, exposing my health, safety, and well-being to germs and bacteria against my own will. Since I had opened wounds and prison officials deliberately refused to provide me with the necessary cleaning supplies during the whole entire eleven days due to those unfairly restrictions imposed by Defendants Harris and Plummer.

20. In addition, I suffer from multiple chronic illnesses, since I am a "C-CODE" psychiatrist mental health level, such as; a) chronic depression, b) stress, and c) anger and as well as chronic physical illnesses such as; a) high blood pressure, b) kidney problems, c) hepatitis-c, and d) H.I.V., and my health, safety, and well-being was put a higher risk of serious harm against my own will.

21. On May 2, 2016, at approximately 0730 hours, I was able to speak with Physician McConnell, due to an unrelated injury to my left knee and I informed him that I felt that I have been denied the right of the basic human needs by prison officials, and that I have not been provided with the necessary daily amount of water, eight flue ounces as required, but he told me that there where nothing he could do about it because those restrictions were imposed by the security Captain, Mr. Harris.

22. On May 3, 2016 at approximately 0830 hours, I was able to speak with Defendant Plummer, Ex-Unit Manager, and I informed him that I felt that I have been the right of the basic human needs, and that I was experiencing symptoms of dehydration, dizziness, headaches, and fatigue due to the lack of body flues but he told me that those restrictions were written in the prison policy and that he could keep them as long as he want to.

23. On the same day above, at approximately 0930 hours, Officer Clark (R.H.U. Officer) while he was conducting his security rounds, every-half-an-hour, looked into my prison cell (D-Quad Unit cell # 1012) and noticed that I was completely naked and without prison shoes, exposed to all females and males staff members throughout the day and night, and kindly asked me if I wanted to get dressed and I said "yes". Probably ten minutes or twenty minutes later, he came back at and brought me a pair of prison shoes and a turtle suit, which is designed for inmates whom are placed in suicide watch.

24. On May 4, 2016, at approximately 1440 hours, while conducting her weekly visits to the RHU, I was able to speak with my assigned Ex- Counselor, Ms. Megan Yost, and I informed her that I felt that I have been deprived of the right of the basic human needs, and that I was experiencing symptoms of dehydration due to the lack of body flues, and also. due to other unreasonable inhumane conditions, and that it was causing me a great deal of emotional distress and as well other physical health problems.

25. And that I was in need of speaking with my assigned psychologist or psychiatrist assistant, but she told me that about the restrictions there where nothing she could do because they were imposed by the Security Captain, Mr. Harris and the RHU Unit manager, Mr. Plummer, but that she will contact the psychiatrist department on my behalf.

26. On May 6, 2016, at approximately 0845 hours, I was able to speak with the Ex-Facility Manager, Mr. Tice and I informed him that I felt that I have been deprived the right of the basic human needs, and that I was experiencing symptoms of dehydration due to the lack of body flues.

27. And that I while I was conversing with him, he looked inside of my cell and noticed that I did not had a mattress or a blanket, then he asked me how long I have been without it, and I told him that since April 30, 2016, and that I have been forced to sleep on the cold bunk ever since. He told me that he was going to look into it as soon as he can. Later that day, at approximately 1930 hours, Officer Golic came around my cell and brought with him a security blanket, designed for inmates whom are in suicide watch, and a mattress.

28. On the same day, at approximately 1430 hours, I was able to speak with my Psychologist, Mr. Diehl and I informed him that I felt that I have been deprived the right of the basic human needs, and that I was experiencing symptoms of dehydration due to the lack of body flues, and that those inhumane conditions were causing me a great deal of emotional distress and as well physical discomfort. He took some notes and told me that he was going to contact my psychiatrist, but about the restrictions he was not so sure.

29. Finally, on May 11, 2016, at approximately 1130 hours, after been deprived for eleven days, I was able to received temporary Basic human needs such as; a) two T-Shirts, b) two boxers, c) two pairs of socks, d) a regular blanket, e) a set of long johns (top and bottom), f) a toothbrush and toothpaste, g) a pair of shower shoes, h) a jumpsuit, including running water, toilet paper, and showers but I did not received my main property until three weeks later.

30. On June/July, 2016, I was called to see the Security Captain, Mr. Harris to discuss about the issues pertaining to my complaint, and I thoroughly explained to him all the details as I recalled them verbally, and about all namely defendants has mistreated me throughout the restraining process.

31. Defendant Harris told me that the restrictions were recommended by RHU Unit Manager, Mr. Plummer and that he just approved them, and that he has the recording disk which recorded the incident, and that he needed to review it to determine whether or not there were any violations of violations.

32. Defendant Harris asked me if I wanted to write a statement concerning my allegations but I told him that I felt that it was not necessary since he had a copy of my written complaint, the disk, and my verbal statement, but he insisted to have it signed anyway and told me to wait for a response from his report.

33. I waited four months for a response, see Attachments (page No. 1, Complaint, and page No. 3, Response), just to find out that prison officials reassigned another Security Captain, Mr. Stevens who denied my grievance, including, all my appeals were denied and prison officials refused to hold accountable all named defendants whom deliberately violated my Constitutional rights by putting my health, safety, and well-being at a higher risk of serious harm against my own will.

## V. EXHAUSTION OF LEGAL REMEDIES

34. Plaintiff Batista used the prison grievance procedure available at the Pennsylvania Department of Corrections through S.C.I Huntingdon to try and solve the problem. On May 13, 2016, plaintiff presented the facts relating to this Complaint. On September 13, 2016, plaintiff was sent a response saying that the grievance has been denied. On September 15, 2016, plaintiff appealed the denial of the grievance to the warden. On October 7, 2016, plaintiff received a response from the warden saying that the grievance was found without merit. On October 13, 2016, plaintiff appealed the warden's decision to the Chief Grievance Officer. On

November 21, 2016, plaintiff received a response saying that the appeal and the requested relief are denied. Plaintiff Batista's grievance, responses, and appeals are attached as Exhibit "A", as required by 42 U.S.C.Section 1997 e (a).

### VI. LEGAL CLAIM

35. Plaintiff Batista's realign and incorporate by reference paragraphs 1-35.

36. Defendant Procinik used excessive force against Plaintiff Batista by punching him on the right-side of his face with his closed fists, and on the back of his head repeatedly with his closed fists, and by hitting repeatedly the plaintiff on his right hand with the hook of the handcuffs causing him multiple wounds, at least eight, while plaintiff were calmed, not violating any prison rules, and was not was not acting disruptively. Defendant Procinik's actions violated Plaintiff Batista's rights under the Eight Amendment of the United States Constitution, and caused plaintiff pain, suffering, physical injury, and emotional distress.

37. By witnessing Defendant Procinik's illegal actions, failing to correct the misconduct, and by encouraging the continuation, Defendants McCroskey, Smith, Sergeant John Doe, and the rest of the unidentified officers, John Does, are also violating Plaintiff Batista's rights under the Eight Amendment of the United States Constitution, and caused plaintiff's pain, suffering, physical injury, and emotional distress.

38. Defendants McCroskey, Smith, Sergeant John Doe, ant the rest of the unidentified officers, john does, exercised deliberate indifference by knowing that the plaintiff had a serious medical need after been subjected to large amounts of

pepper spray, two heavy loads, and that his rights were violated by keeping him in a small enclosed area, the holding cell and the prison cell, and not providing him with a proper shower, violating plaintiff rights under the Eight Amendment of the United States Constitution, caused plaintiff's pain, suffering, physical injury, and emotional distress..

39. Defendants Harris and Plummer exercised deliberate indifference by refusing to provide plaintiff with the necessary basic human needs for approximately eleven days, neither they made an honest attempt to provide the plaintiff basic toilet articles such as; a) toilet paper, b) soap, c) toothbrush and toothpaste, d) towels, e) shower shoes or prison shoes, f) running water, g) clothing, and h) bedding, and including to be forced to endured unsafe conditions, and extremely jail-cell cold temperatures violated plaintiff's rights under the Eighth Amendment of the United States Constitution, caused plaintiff's pain, suffering, physical injury, and emotional distress.

40. Plaintiff Batista has no plain, adequate or remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injure by the conduct of the Defendants unless this honorable court grants the declaratory and injunction relief which he seeks.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Batista respectfully pray that this honorable court enter judgment:

41. Granting plaintiff a declaratory that the acts and omissions described herein violated his rights under the Constitution and laws of the United States of America.

42. A preliminary and permanent injunction ordering Defendants Harris, Prommer, Procinik, and Smith to cease: a) their physical violence, b) their use of chemical agent (pepper spray), c) their abuse of authority, and d) their deliberate indifference against plaintiff serious health, safety, and well-being because plaintiff is legally a mental ill person.

43. Granting plaintiff Batista compensatory damages award in the amount of $ 100,000 against each defendant, jointly and severely for their deliberate indifference, pain, suffering, physical injury, and emotional distress.

44. Plaintiff seek punitive damages in the amount of $ 150,000 against each defendant, jointly and severely.

45. plaintiff seek a jury trial on all issues triable by jury.

46. Plaintiff seek recovery of his cost in the suit and

47. Any additional relief this honorable court deems just, proper, and equitable.

## VERIFICATION

**I, Jose Batista, # LH-8853, have read the foregoing statements in the complaint and hereby verify that the matters alleged are true, except as to matters alleged**

On information and belief, and as to those, I believe them to be true; I certify under penalty of perjury that the foregoing is true and correct.

Executed at SCI-Smithfield., P.O. Box 999.1120 Pike Street. Huntingdon, Pennsylvania, 16652. On October 8, 2017.

Respectfully Submitted,
Jose Batista, #LH-8853

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE BATISTA, # LH-8853,
    Plaintiff.

: Civil Action No. _____

V.

: Judge _____

Captain Harris, Ex-Security Capt.,
IN THE CASE, et.al, Defendants.

RE: New Cause of Action

To whom it may concern:

    With all do respect, please, enclosed are the following documents: Motion for appointment of counsel, memorandum of Law in Support, Declaration, four Summons, four Complaints, Grievance and Attachments, and its Exhibits, to be filed on my behalf as a new cause of action. Additionally, be also aware I have a previous lawsuit within the Middle District Court, (1:15-CV-1805, Judge Caldwell, Dated: 9-17-15), and I'm still awaiting for the Judge's Disposition on a Summary Judgment Motion since June 30, 2017.
                    Thank you

Date: October 18, 2017

Respectfully Submitted,
Jose Batista, # LH-8853
P.O. Box 999
1100 Pike Street
Huntingdon, PA 16652

José Batista, II LH-8853
SCI-Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

TO:

RECEIVED
SCRANTON

OCT 25 2017

PER_____ DEPUTY CLERK



**USPS TRACKING #**



9114 9014 9645 1086 1881 40

USPS TRACKING #   9114 9014 9645 1086 1881 40
& CUSTOMER   For Tracking or inquiries go to USPS.com
RECEIPT   or call 1-800-222-1811.



**PRIORITY ★ MAIL ★**



For Domestic Use Only